No. 22-55950

---

IN THE
# United States Court of Appeals for the Ninth Circuit

---

KENNETH HOLLEY-GALLEGLY, on behalf of herself
and all others similarly situated,

*Plaintiff-Appellee,*

*v.*

TA OPERATING LLC, a Delaware corporation, DBA
Petro Shopping Center, DBA Travel Centers of
America,

*Defendant-Appellant.*

---

On Appeal from the United States District Court
for the Central District of California
No. 22-cv-00593-JGB-SHK
Hons. Jesus G. Bernal, Shashi H. Kewalramani

---

## OPENING BRIEF FOR APPELLANT

---

E. Joshua Rosenkranz
ORRICK, HERRINGTON &
  SUTCLIFFE LLP
51 West 52nd Street
New York, NY 10019

Max Carter-Oberstone
ORRICK, HERRINGTON &
  SUTCLIFFE LLP
405 Howard Street
San Francisco, CA 94105

Robert M. Loeb
Sarah H. Sloan
ORRICK, HERRINGTON &
  SUTCLIFFE LLP
1152 15th Street, NW
Washington, DC 20005
202-339-8475
*rloeb@orrick.com*

*Counsel for TA Operating LLC*

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Appellant TA Operating LLC states that it is a limited liability company and wholly owned subsidiary of Travel Centers of America Inc. Travel Centers of America Inc. is a publicly traded company.  No publicly held company owns 10% or more of Travel Centers of America Inc.

# TABLE OF CONTENTS

Page

CORPORATE DISCLOSURE STATEMENT ............................................. i

TABLE OF AUTHORITIES .................................................................. iv

INTRODUCTION .................................................................................. 1

JURISDICTIONAL STATEMENT ........................................................ 4

STATEMENT OF THE ISSUES ............................................................ 5

ADDENDUM ......................................................................................... 5

STATEMENT OF THE CASE ............................................................... 5

    Holley-Gallegly Works for TA Operating and Signs an
        Arbitration Agreement. ....................................................... 5

    Holley-Gallegly Sues TA Operating Without Submitting His
        Claim to the Grievance or Arbitration Processes. .............. 10

    Holley-Gallegly Signs the Contract. ........................................... 10

    The District Court Denies TA's Motion to Compel
        Arbitration. ......................................................................... 11

SUMMARY OF THE ARGUMENT ..................................................... 13

STANDARD OF REVIEW ................................................................... 17

ARGUMENT ....................................................................................... 17

    I.    The FAA Preempts State Laws That Impede
        Arbitration's Core Attributes of Efficiency and
        Informality ......................................................................... 17

    II.   The District Court Erred In Refusing To Enforce The
        Delegation Clause. ............................................................. 22

    III.  The Agreement To Arbitrate Plaintiff's Employment
        Claims Is Enforceable. ....................................................... 29

    IV.  To The Extent Any Of The Provisions Of The Contract
        Are Unenforceable, They Should Have Been Severed. ....... 43

CONCLUSION .................................................................................... 49

STATEMENT OF RELATED CASES

CERTIFICATE OF COMPLIANCE

ADDENDUM

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*24 Hour Fitness, Inc. v. Superior Ct.*,
66 Cal. App. 4th 1199 (1998) ............................................................... 41

*A & M Produce Co. v. FMC Corp.*,
135 Cal. App. 3d 473 (1982) .................................................................. 25

*Adair v. Stockton Unified Sch. Dist.*,
162 Cal. App. 4th 1436 (2008) ............................................................. 42

*Armendariz v. Found. Health Psychcare Servs., Inc.*,
24 Cal. 4th 83 (2000)........................................18, 21, 24, 31, 38, 39, 48

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011)..............................13, 14, 17, 18, 19, 25, 30, 31, 47

*Baltazar v. Forever 21, Inc.*,
62 Cal. 4th 1237 (2016)...................................................... 14, 22, 24, 37

*Birbrower, Montalbano, Condon & Frank v. Superior Ct.*,
17 Cal. 4th 119 (1998).................................................................. 16, 44

*Bravo v. RADC Enterprises, Inc.*,
33 Cal. App. 5th 920 (2019) ................................................................. 35

*Brennan v. Opus Bank*,
796 F.3d 1125 (9th Cir. 2015)............................................................... 28

*Buckeye Check Cashing, Inc. v. Cardegna*,
546 U.S. 440 (2006)............................................................................... 28

*Caremark, LLC v. Chickasaw Nation*,
43 F.4th 1021 (9th Cir. 2022) .............................................................. 22

*Chin v. Advanced Fresh Concepts Franchise Corp.*
194 Cal. App. 4th 704 (2011) ............................................................... 23

iv

*Coast Plaza Drs. Hosp. v. Blue Cross of Cal.*,
   83 Cal. App. 4th 677 (2000) .......................................................... 30, 36

*Dotson v. Amgen, Inc.*,
   181 Cal. App. 4th 975 (2010) ........................................... 14, 15, 25, 33

*Epic Sys. Corp. v. Lewis*,
   138 S. Ct. 1612 (2018)........................................................................ 17

*First Options of Chicago, Inc. v. Kaplan*
   514 U.S. 938 (1995)........................................................................... 23

*Fitz v. NCR Corp.*,
   118 Cal. App. 4th 702 (2004) .......................................................... 48

*Grafton Partners L.P. v. Superior Ct.*,
   36 Cal. 4th 944 (2005).................................................................... 40

*Graham v. Scissor-Tail, Inc.*,
   28 Cal. 3d 807 (1981) ..................................................................... 26

*Granite Rock Co. v. Int'l Brotherhood of Teamsters*,
   561 U.S. 287 (2010)......................................................................... 41

*Green Tree Fin. Corp.-Alabama v. Randolph*,
   531 U.S. 79 (2000)........................................................................... 18

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
   139 S. Ct. 524 (2019)....................................................................... 23

*Hines v. Anchor Motor Freight*,
   424 U.S. 554 (1976).......................................................................... 26

*Kindred Nursing Centers Ltd. P'ship v. Clark*,
   137 S. Ct. 1421 (2017)...................................................................... 20

*Lim v. TForce Logistics, LLC*,
   8 F.4th 992 (9th Cir. 2021) ............................................................ 13

*Lucas v. Hertz Corp.*,
   No. C 11-01581, 2012 WL 5199384 (N.D. Cal. Oct. 22,
   2012)................................................................................................ 31

v

*Magno v. The College Network, Inc.*,
    1 Cal. App. 5th 277 (2016) ................................................................ 48

*Malone v. Superior Court*,
    226 Cal. App. 4th 1551 (2014) ............................................. 22, 23, 26

*Marathon Ent., Inc. v. Blasi*,
    42 Cal. 4th 974 (2008) .......................................................... 16, 43, 46

*Marlo v. UPS, Inc.*,
    639 F.3d 942 (9th Cir. 2011) ............................................................. 17

*Mastrobuono v. Shearson Lehman Hutton, Inc.*,
    514 U.S. 52 (1995) ............................................................................ 35

*Minkler v. Safeco Ins. Co. of Am.*,
    49 Cal.4th 315 (2010) ....................................................................... 45

*Mohamed v. Uber Techs., Inc.*,
    848 F.3d 1201 (9th Cir. 2016) ............................................. 15, 21, 28

*OTO, L.L.C. v. Kho*,
    8 Cal. 5th 111 (2019) ................................................................. 18, 21

*Poublon v. C.H. Robinson Co.*,
    846 F.3d 1251 (9th Cir. 2017) . 14, 15, 17, 25, 26, 30, 33, 34, 37, 40, 41,
    42, 46

*Prima Donna Dev. Corp. v. Wells Fargo Bank, N.A.*,
    42 Cal. App. 5th 22 (2019) ............................................................... 20

*Rent-A-Center, W., Inc. v. Jackson*,
    561 U.S. 63 (2010) ...................................................... 15, 23, 26, 27, 28

*Sanchez v. Carmax Auto Superstores California, LLC*,
    224 Cal. App. 4th 398 (2014) ...................................................... 31, 36

*Sonic-Calabasas A, Inc. v. Moreno*,
    51 Cal. 4th 659 (2011) ...................................................................... 42

*Sonic-Calabasas A, Inc. v. Moreno*,
    57 Cal. 4th 1109 (2013) .............................................. 14, 18, 19, 20, 22

*Tompkins v. 23andMe, Inc.*,
  840 F.3d 1016 (9th Cir. 2016) ....................................... 36, 41

*Wemyss v. Superior Ct.*,
  38 Cal. 2d 616 (1952) ........................................................ 35

**Statutes & Rules**

9 U.S.C. § 2 ........................................................................ 18, 46

9 U.S.C. § 3 .............................................................................. 18

9 U.S.C. § 4 .............................................................................. 18

9 U.S.C. § 16(a)(1)(B) .............................................................. 4

28 U.S.C. § 1332 ....................................................................... 4

Cal. Civ. Code § 1670.5............................................................ 21

Cal. Civil Code § 1598 ............................................................ 42

Cal. Civil Code § 1599 ............................................................ 42

Ninth Cir. R. 28-2.7 .................................................................. 5

**Other Authorities**

1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts
  § 422 .................................................................................... 42

# INTRODUCTION

Defendant TA Operating LLC ("TA") employed plaintiff as a mechanic.  Upon being hired, plaintiff was asked to review and complete various pre-employment forms, including Form I-9, Form W-4, and an Employee Information Profile.  Among the forms plaintiff was asked to review and complete, was one entitled "Mutual Agreement To Resolve Disputes And Arbitrate Claims" (the Contract).  It provided that both TA and plaintiff agreed to arbitrate all "claims or controversies arising out of [plaintiff's] employment" with TA.  The agreement advised him, in bold all-caps lettering, that he was free to seek the advice of counsel before signing it.

Plaintiff twice signed the arbitration agreement—once in 2018, when TA hired him as a "technician-mechanic," and again in 2019, when plaintiff was hired as a "truck service advisor."

But despite twice agreeing to arbitrate any claims arising out of his employment, plaintiff later filed a class action suit against TA, asserting state wage-and-hour law violations.  TA removed the case to federal court and filed a motion to compel arbitration.  But the district court denied the motion.  The district court's order is riddled with legal

1

errors, both in its application of the Federal Arbitration Act and in its interpretation of the Contract.

Despite recognizing that the Contract "clearly and unmistakably" delegated to the arbitrator the task of deciding whether the Contract was enforceable, the district court opted to decide this legal question, holding that the delegation clause was itself unenforceable. This conclusion was not based on any feature of the delegation clause, but rather on an entirely unrelated jury waiver provision. Under clearly established U.S. Supreme Court precedent that was legal error. The Supreme Court and this Court hold that unconscionability challenges to a delegation clause must be based on factors that are "specific to the delegation provision" itself, not the broader arbitration agreement. The district court's contrary ruling must be vacated and the delegation clause enforced.

There is no need to reach any of the other issues if this Court agrees that the district court erred in refusing to enforce the delegation clause. If the Court does reach the other issues, the district court's ruling on the other aspects likewise cannot stand. The district court held that the agreement to arbitrate plaintiff's employment-related

2

claims was unenforceable but none of the cited provision are unconscionable, and certainly not unconscionable to the high degree necessary to decline to enforce the Contract.

First, the court held that the Contract's streamlined discovery provisions were unconscionable. But the Contract provides far more discovery than other arbitration agreements that courts have upheld.

Second, the Court cited the Contract's attorneys' fees provision. The provision, however, permits the arbitrator to "award reasonable attorneys' fees and expenses" whenever "expressly required by an applicable statute or law" or when the arbitrator determines that failing to award such fees "would be unconscionable under applicable law." There is nothing unconscionable about such a term because it simply mirrors the same standard that the plaintiff would encounter in a judicial forum.

Finally, the district court held the jury waiver provision to be unconscionable. But the jury waiver provision is not part of the agreement to arbitrate plaintiff's employment claims, and accordingly does not bear on the unconscionability analysis of that agreement. It

merely creates a contingency (a bench trial) in the event that the agreement to arbitrate is held unenforceable.

In any event, the jury-waiver provision, like all the other supposed infirmities with the Contract, could be easily severed. But rather than severing the allegedly offending terms and enforcing the remainder of the Contract, the district court summarily held that the entire Contract had to be struck down. In so doing, it ignored California's "very liberal view of severability," which requires that courts enforce an agreement so long as "any lawful portion" of a contract exists.

For all these reasons, this Court should vacate the order below and remand with instructions to grant TA's motion to compel arbitration.

## JURISDICTIONAL STATEMENT

The district court had jurisdiction over this case pursuant to 28 U.S.C. § 1332. This Court has jurisdiction under 9 U.S.C. § 16(a)(1)(B). The district court order on appeal was filed on September 16, 2022. ER-4. The notice of appeal was timely filed on October 13, 2022. ER-184.

## STATEMENT OF THE ISSUES

1. Did the district court err in holding that the contractual delegation clause was unenforceable?

2. Did the district court err in holding that the agreement to arbitrate plaintiff's employment-related claims was unenforceable?

3. Did the district court err in failing to apply generally applicable California law when concluding that the provisions it found unconscionable could not be severed?

## ADDENDUM

The addendum to this brief contains all relevant statutes. *See* Ninth Cir. R. 28-2.7.

## STATEMENT OF THE CASE

### *Holley-Gallegly Works for TA Operating and Signs an Arbitration Agreement.*

TA owns and operates truck stops and convenience stores throughout the United States, including in California. ER-67. Kenneth Holley-Gallegly worked for TA as a mechanic in Las Vegas, Nevada, from November 2018 to January 2019 and as a truck service advisor in Ontario, California, from March 2019 to September 2021. ER-67.

5

When he was hired by TA, Holley-Gallegly—like all new hires—received an email with a secure link to TA's online applicant portal. ER-69. When Holley-Gallegly logged in to that portal, he would have seen a home screen with links to TA's required onboarding documents. ER-69-70. Holley-Gallegly had the option to print hard copies of any of the onboarding documents. *Id.*

One of the documents that new hires must sign is entitled "Mutual Agreement to Resolve Disputes and Arbitrate Claims" (the Contract). The document is five pages long, with size-12 font. ER-77-81. The Contract requires both the employee and TA to submit all employment-related disputes and claims to the alternative dispute resolution procedures set forth in the Contract. Under those agreed-upon procedures, first, a dispute or claim is subject to a grievance process and then, if necessary, an arbitration process. ER-77, ER-83.

*The Arbitration Firm and Arbitrator Selection*

The Contract provides that the arbitration firm National Arbitration and Mediation, Inc. ("NAM"), arbitrates any disputes, though TA may select a different firm if it gives the employee advance notice. ER-78, ER-84 (Contract Section II(B)(i)). NAM provides the

6

parties with a list of three possible arbitrators, and each party can eliminate one. ER-79, ER-85 (Contract Section II(B)(iii)).

*Rules of Arbitration*

The Contract further provides that the arbitration is conducted in accordance with NAM's rules, except as otherwise specified. ER-79, ER-85 (Contract Section II(B)(vi)). The Contract includes instructions for how to obtain a copy of those rules. Moreover, since at least March 15, 2019, TA has required all new hires in California to open and digitally sign the NAM rules, in addition to the Contract. ER-70.

Under the terms of the Contract, either party—TA or the employee—may elect to conduct prehearing discovery, consisting of up to five interrogatories, five requests for production, two depositions, and searches of up to five search terms or phrases in email accounts for two addresses for a 12-month period. ER-79, ER-85 (Contract Section II(B)(vi)). Under the NAM rules, the parties may also obtain "copies of all documents … upon which [each party] rel[ies] in support of [its] claims or defenses." ER-95. And parties may obtain additional discovery upon the arbitrator's finding that it "is not overly burdensome and will not unduly delay conclusion of the Arbitration." ER-96.

7

*Costs, Fees, and Expenses*

The Contract provides that TA will pay all of the arbitration firm's fees, as well as the arbitrator's fees and expenses, and will pay or reimburse the employee for any filing fees that the arbitration firm may charge to initiate arbitration. ER-79, ER-85 (Contract Section II(B)(iv)). Each party otherwise bears its own "costs and fees associated with the arbitration including, but not limited to, attorneys' fees and the costs and fees of responding to discovery requests." ER-79, ER-85 (Contract Section II(B)(iv)).

However, the arbitrator may award reasonable attorneys' fees and expenses if expressly required by an applicable statute or law, or, in the absence of such a requirement, if the arbitrator determines that a failure to award attorneys' fees and expenses would be unconscionable under applicable law. ER-80, ER-86 (Contract Section II(B)(vi)). The Contract also specifies that if TA prevails in the arbitration, TA will not seek or pursue from the employee costs it incurred in connection with the arbitration. ER-80, ER-86 (Contract Section II(B)(ix)).

*Delegation Clause and Enforceability of Contract*

Finally, the Contract includes a delegation clause, which states, "[a]ll challenges to the interpretation or enforceability of any provision of this Agreement shall be brought before the arbitrator, and the arbitrator shall rule on all questions regarding the interpretation and enforceability of this Agreement." ER-80, ER-86 (Contract Section III(C)). The delegation clause is essentially an additional arbitration clause nested within the Contract. While the Contract represents an agreement to arbitrate all employment-related claims, the delegation clause is a separate agreement to arbitrate the antecedent question of whether the Contract is enforceable.

The Contract specifies that if any provision is "construed to be unlawful or unenforceable," that provision "shall" be deleted or reformed, and "the remainder of this Agreement shall remain in full force and effect as written." ER-80-81, ER-86-87 (Contract Section III(C)). The Contract goes on to say that in the event the agreement to arbitrate is determined to be unenforceable, claims between the employee and TA related to his employment shall be subject to a non-

jury trial in the federal or state court with jurisdiction over the matter. ER-81, ER-87 (Contract Section III(C)).

### *Holley-Gallegly Signs the Contract.*

Holley-Gallegly signed the Contract twice—once in November 2018 and again in March 2019. ER-72-73, ER-77-81, ER-83-87. He never submitted any objection to the terms of the Contract.

### *Holley-Gallegly Sues TA Operating Without Submitting His Claim to the Grievance or Arbitration Processes.*

Despite agreeing to submit any work-related disputes to a grievance process and then arbitration, Holley-Gallegly filed a putative class action complaint against TA in the California Superior Court for the County of San Bernardino, alleging violations of various employment and labor laws. The complaint included state law claims for failure to pay overtime wages at the legal overtime pay rate, failure to pay premium wages at the legal pay rate, failure to provide adequate rest periods, and failure to timely furnish accurate itemized wage statements. ER-129. TA timely removed the action to federal court under the Class Action Fairness Act in April 2022. ER-106-21.

TA then provided Holley-Gallegly's counsel with a copy of the Contract signed by Holley-Gallegly and requested that Holley-Gallegly

10

submit his claims to arbitration on an individual basis, as required by the Contract. ER-44, ER-47. Holley-Gallegly refused to do so. ER-45.

***The District Court Denies TA's Motion to Compel Arbitration.***

TA therefore filed a motion to compel arbitration. The district court denied the motion. ER-4.

First, the court refused to enforce the delegation clause. ER-8-9. It found the clause procedurally unconscionable because the Contract was a nonnegotiable condition of Holley-Gallegly's employment and therefore was, according to the court, an unconscionable "contract of adhesion." ER-8. The court also said that the delegation clause was substantively unconscionable. In reaching that conclusion, the court focused not on the delegation clause itself but on a single sentence addressing an unrelated issue: a waiver of the right to trial by jury. ER-9; *see* ER-81, ER-87 ("If this agreement is determined to be unenforceable, any claims between you and the company related to your employment shall be subject to a non-jury trial …." (capitalization omitted)). Because the district court found that sentence substantively unconscionable, the court reasoned that the delegation clause was likewise substantively unconscionable. ER-9.

11

Accordingly, rather than allowing an arbitrator to determine the enforceability of the Contract as required by the delegation clause, the court went on to make that determination itself. In addition to finding the jury trial waiver substantively unconscionable, the court concluded that the Contract's requirement that each party bears its own costs and fees was substantively unconscionable. ER-9-10. The court acknowledged that under the Contract the arbitrator may award reasonable attorneys' fees and expenses if required by an applicable law, but it nevertheless expressed concern that the provision "implies the imposition of large fees that seeks to either (1) deter an employee from retaining legal representation, (2) deter an employee from seeking simple discovery requests, or (3) deter an employee from initiating arbitration at all." ER-10.

The court further said that because the Contract "narrowly limit[s]" discovery without affording the arbitrator discretion to grant further discovery, the limitations on discovery were substantively unconscionable. ER-11.

Finally, the court decided not to sever the unconscionable provisions, but rather to hold that the entire arbitration agreement was

unenforceable.  The court said that "multiple defects" in an arbitration agreement indicate that the employer is attempting "to impose arbitration on an employee … as an inferior forum that works to the employer's advantage."  ER-12 (quoting *Lim v. TForce Logistics, LLC*, 8 F.4th 992, 1006 (9th Cir. 2021)).  The court concluded that the multiple unconscionable provisions it found in the Contract indicated "bad faith in drafting."  *Id.*  And the court held—without any further explanation—that it could not sever the unconscionable provisions and "enforce the remaining Agreement without augmentation to make it lawful."  *Id.*  The court thus declined "to sever the unconscionable provisions" and declined "to enforce the Agreement due to pervasive unconscionability."  *Id.*

TA timely appealed the denial of the motion to compel.  ER-184-87.  The district court granted the parties' stipulation to stay proceedings pending appeal.  ER-3.

## SUMMARY OF THE ARGUMENT

I.  Section 2 of the Federal Arbitration Act reflects a "'liberal federal policy favoring arbitration.'"  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011).  While it permits parties to raise state law

defenses to the enforcement of an arbitration agreement, it preempts any state law that interferes with the fundamental arbitral attributes of "informality," "efficiency," or "streamlined procedures." *Id.* at 344, 348-350. Accordingly, like all state law defenses to enforcement of an arbitration agreement, "courts cannot impose unconscionability rules that interfere with arbitral efficiency" or other key attributes of arbitration. *Sonic-Calabasas A, Inc. v. Moreno*, 57 Cal. 4th 1109, 1141 (2013).

II. The district court erred in refusing to the enforce the delegation clause. As the district court acknowledged, the Contract "clear[ly] and unmistakab[ly]" delegates the question of enforceability to the arbitrator. ER-7. While the delegation clause is part of a contract of adhesion, such contracts are ubiquitous and must be enforced unless there is a high degree of substantive unconscionability. *Baltazar v. Forever 21, Inc.*, 62 Cal. 4th 1237, 1244 (2016); *Dotson v. Amgen, Inc.*, 181 Cal. App. 4th 975, 982 (2010); *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1261-62 (9th Cir. 2017). As to substantive unconscionability, the district court could only point to a jury-waiver provision, but that term is entirely unrelated to the delegation clause and therefore cannot

14

support a holding of unconscionability. *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 74 (2010); *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1210 (9th Cir. 2016) ("When considering an unconscionability challenge to a delegation provision, the court must consider only arguments 'specific to the delegation provision.'").

III.  The district court erred in refusing to enforce the agreement to arbitrate plaintiff's employment-related claims.  The Contract's streamlined discovery provisions are not unconscionable.  They allow for more discovery than other arbitration agreements that courts have upheld against unconscionability challenges.  *Compare* ER-79 *with Dotson*, 181 Cal. App. 4th at 982, 984 *and Poublon*, 846 F.3d at 1271.

Contrary to the district court's characterizations, the Contract does not foreclose the possibility that plaintiff might recover attorneys' fees.  Just the opposite.  It permits plaintiff to recover such fees precisely as he would in a judicial forum.  Specifically, the arbitrator may "award reasonable attorneys' fees and expenses" whenever "expressly required by an applicable statute or law" or when the arbitrator determines that failing to award such fees "would be unconscionable under applicable law."  ER-80.

15

Finally, while the provision waiving the jury trial right outside of arbitration is unenforceable in California, that provides no basis for refusing to enforce the agreement to arbitrate. The jury waiver is not part of the agreement to arbitrate plaintiff's employment claims. It merely provides for a contingency in the event that the agreement to arbitrate those claims is held to be unenforceable.

IV. In refusing to sever the purportedly unconscionable provisions, the district court failed to apply California's general contract law, which requires a liberal approach to severability. Established precedent mandates severing unlawful provisions as long as there is some lawful purpose to the contract. *Marathon Ent., Inc. v. Blasi*, 42 Cal. 4th 974, 991 (2008); *Birbrower, Montalbano, Condon & Frank v. Superior Ct.*, 17 Cal. 4th 119, 138 (1998). When the Contract is analyzed under that approach, it is clear that the purportedly unconscionable provisions must (and can) be severed. The district court reached a contrary conclusion only by relying on an arbitration-specific rule that multiple unconscionable provisions render the entire arbitration agreement unlawful. The Federal Arbitration Act does not

16

permit treating arbitration agreements in such a discriminatory manner.

## STANDARD OF REVIEW

This Court reviews de novo the denial of a motion to compel arbitration. *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1259 (9th Cir. 2017). It also reviews the interpretation of contract provisions de novo. *Id.* A district court's decision not to sever is reviewed for abuse of discretion, but where that decision was premised on legal error there is necessarily an abuse of discretion. *Marlo v. UPS, Inc.*, 639 F.3d 942, 946 (9th Cir. 2011).

## ARGUMENT

### I. The FAA Preempts State Laws That Impede Arbitration's Core Attributes Of Efficiency And Informality

Congress enacted the Federal Arbitration Act (FAA) "in response to widespread judicial hostility to arbitration agreements." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). Prior to the FAA's enactment, "judicial antagonism toward arbitration … 'manifested itself in a great variety of devices and formulas declaring arbitration against public policy.'" *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1623 (2018). The FAA's essential purpose was "to reverse [this]

longstanding judicial hostility to arbitration" by placing arbitration agreements on equal "footing [with] other contracts." *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 80 (2000).

The key FAA section relevant here is Section 2. There, Congress provides that an agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. This section reflects a "'liberal federal policy favoring arbitration.'" *Concepcion*, 563 U.S. at 339. And like federal law, California law also "strongly favors arbitration." *OTO, L.L.C. v. Kho*, 8 Cal. 5th 111, 125 (2019); *see also Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 97 (2000).

The final clause of section 2—often termed the "savings clause"— is a narrow exception to the general directive to enforce arbitration agreements. *Sonic-Calabasas A, Inc. v. Moreno*, 57 Cal. 4th 1109, 1141 (2013) (hereafter *Sonic II*); *see also* 9 U.S.C. § 4 ("court[s] shall" enforce arbitration agreements "in accordance with the terms of the agreement"); *id.* § 3 (similar). It permits the party opposing arbitration to raise generally applicable state law defenses to the enforceability of

the arbitration agreement, including "'contract defenses, such as fraud, duress, or unconscionability.'" *Concepcion*, 563 U.S. at 339.

The FAA, however, preempts any state laws or rules that single out arbitration for disfavored treatment, as well as generally applicable laws that "have a disproportionate impact on arbitration agreements," *id.* at 342, or otherwise "interfere[] with fundamental attributes of arbitration," *Sonic II*, 57 Cal. 4th at 1144. Accordingly, state laws, rules, and policies may not be applied in a way that interfere with the fundamental arbitral attributes of "informality," "efficiency," or "streamlined procedures." *Concepcion*, 563 U.S. at 344, 348-350; *see also id.* at 351 ("States cannot require a procedure that is inconsistent with the FAA, even if it is desirable for unrelated reasons").

In *Concepcion*, for example, the Supreme Court held that the FAA preempted a California rule that class action waivers were unconscionable because "the switch from bilateral to class arbitration sacrifices the principal advantage of arbitration—its informality—and makes the process slower, more costly, and more likely to generate procedural morass than final judgment." 563 U.S. at 348. For the same reasons, the California Supreme Court held that the FAA preempted a

19

state law requiring certain labor disputes to be litigated in an administrative forum before they could be arbitrated. *Sonic II*, 57 Cal. 4th at 1140-42.

And in *Kindred Nursing Centers Ltd. P'ship v. Clark*, 137 S. Ct. 1421 (2017) the U.S. Supreme Court held that the FAA preempted Kentucky's "clear-statement rule." The rule, which emanated from the state constitutional "'right to access the courts and to trial by jury,'" required contracts conferring the power of attorney to explicitly reference arbitration in order to delegate the right to enter arbitration agreements. *Id.* at 1426-27. The Court held that, even though framed by the State as a general rule, the presumption against a jury trial waiver was preempted because it "disfavor[ed] contracts that ... have the defining features of arbitration agreements": "namely, a waiver of the right to go to court and receive a jury trial." *Id.*; *see also Prima Donna Dev. Corp. v. Wells Fargo Bank, N.A.*, 42 Cal. App. 5th 22, 44 (2019) ("Requiring that a claim be resolved by a jury (and, therefore, rejecting the possibility that it could be decided by an arbitrator) is plainly incompatible with arbitration.").

20

Unconscionability—the state law doctrine at the heart of this case—permits courts to hold unenforceable a contract (or certain portions of a contract) when a party lacks any "meaningful choice in deciding whether to agree" to a transaction that contains terms that are grossly unfavorable to that party. *Kho*, 8 Cal. 5th at 125; *see also* Cal. Civ. Code § 1670.5. To hold a contract term unenforceable on this basis, a court must find that it is *both* procedurally and substantively unconscionable. The "former focus[es] on oppression or surprise due to unequal bargaining power, the latter on overly harsh or one-sided' results." *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1210 (9th Cir. 2016) (quotations omitted). But while "[b]oth procedural and substantive unconscionability must be shown for the defense to be established," "'they need not be present in the same degree.'" *Kho*, 8 Cal. 5th at 125. "[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to [conclude] that the term is unenforceable, and vice versa." *Armendariz*, 24 Cal. 4th at 114.

To hold a contract term unenforceable, the degree of unconscionability must be exceedingly high. The doctrine may not be

used to undo "a simple old-fashioned bad bargain." *Kho*, 8 Cal. 5th at

130. Only terms that are "so one-sided as to shock the conscience" may

be invalidated. *Baltazar v. Forever 21, Inc.*, 62 Cal. 4th 1237, 1244

(2016) (internal quotation marks omitted). Finally, like all state law

defenses to enforcement of an arbitration agreement, "courts cannot

impose unconscionability rules that interfere with arbitral efficiency" or

that disfavor arbitration. *Sonic II*, 57 Cal. 4th at 1138, 1141.

## II. The District Court Erred In Refusing To Enforce The Delegation Clause.

Instead of delving into the enforceability of the terms of the

arbitration agreement, the district court should have left those

questions to the arbitrator. The Contract had a clear "delegation

clause," requiring that result, and the court erred in refusing to honor

that term. "A delegation clause," like the one at issue here, "requires

issues of interpretation and enforceability of an arbitration agreement

to be resolved by the arbitrator." *Malone v. Superior Court*, 226 Cal.

App. 4th 1551, 1559 (2014). It "is a clause within an arbitration

provision that delegates to the arbitrator gateway questions of

arbitrability, such as whether the … arbitration provision is enforceable

at all." *Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021, 1029 (9th Cir. 2022).

"Both the United States Supreme Court and California courts agree that, in order for a delegation clause to be enforceable, it must be clear and unmistakable." *Malone,* 226 Cal. App. 4th at 1560 (citing *First Options of Chicago, Inc. v. Kaplan* 514 U.S. 938, 944-945 (1995); *Chin v. Advanced Fresh Concepts Franchise Corp.* 194 Cal. App. 4th 704, 709 (2011)). *See also Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 531 (2019) (so long as the clause "clear[ly] and unmistakabl[y]" delegates the threshold issue of enforceability to the arbitrator "courts must respect the parties' decision as embodied in the contract"); *Rent-A-Center, West, Inc. v. Jackson,* 561 U.S. 63, 69 n.1 (2010).

The delegation clause in the Contract here met that standard. It unambiguously delegates to the arbitrator the role of deciding "[a]ll challenges to the interpretation or enforceability of any provision of this Agreement." ER-80, ER-86. Thus, under the plain terms of the Contract, and under binding Supreme Court precedent, the arbitrator,

and not the court, in the first instance is to resolve any claim that a term of the Contract is unconscionable or otherwise unenforceable.

In refusing to enforce the delegation clause, the district court said it was not bound by the delegation clause because it was unenforceable. ER-7-9. Specifically, the court ruled that the clause was procedurally unconscionable because the Contract was a contract of adhesion, and that the delegation clause was substantively unconscionable in light of a separate and unrelated jury waiver provision. ER-8-9. The court's refusal to enforce the delegation clause was, however, erroneous as a matter of law.

The grounds cited by the district court for refusing to enforce the delegation clause cannot withstand scrutiny. As to procedural unconscionability, the court held that the clause was adhesive because it was a take-it-or-leave term that plaintiff had no opportunity to negotiate. ER-8. Under the district court's broad reasoning, however, almost all arbitration terms would be deemed procedurally unconscionable.

Contracts of adhesion—"standardized contract[s] … drafted by the party of superior bargaining strength" and presented on a take-it-or-

leave-it basis (*Armendariz*, 24 Cal. 4th at 113)— "are indispensable facts of modern life that are generally enforced." *Baltazar*, 62 Cal. 4th at 1244; *Concepcion*, 563 U.S. at 346-47 ("the times in which consumer contracts were anything other than adhesive are long past"). Recognizing that adhesive terms in employment and consumer contracts are ubiquitous, California law does not treat them as, by themselves, sufficient grounds for finding a provision to be unenforceable.  Instead, the courts treat adhesive terms as imposing only a "minimal" degree of unconscionability.  *Dotson v. Amgen, Inc.*, 181 Cal. App. 4th 975, 982 (2010); *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1261-62 (9th Cir. 2017)("the adhesive nature of a contract, without more, would give rise to a low degree of procedural unconscionability at most").

In regard to adhesive terms, the California courts explain, "the mere fact that a contract term is not read or understood by the nondrafting party or that the drafting party occupies a superior bargaining position will not authorize a court to refuse to enforce the contract." *A & M Produce Co. v. FMC Corp.*, 135 Cal. App. 3d 473, 486 (1982).  Rather, "commercial practicalities" dictate that such adhesive

25

terms will only be denied enforcement where they are also substantively unreasonable. *Id*. at 486-87.

Accordingly, where, as here, the adhesive nature of the term is the only factor bearing on procedural unconscionability, the term must be enforced "'unless the degree of substantive unconscionability is high.'" *Poublon*, 846 F.3d at 1261. As long as the substantive contract terms "'operate within some minim[al] levels of integrity,'" the terms must be enforced. *Graham v. Scissor-Tail, Inc.*, 28 Cal. 3d 807, 825 (1981) (quoting *Hines v. Anchor Motor Freight*, 424 U.S. 554, 571 (1976)).

There was no argument presented by plaintiff here and no finding by the district court that the delegation clause itself was substantively unconscionable. And there would have been no basis for such an argument. Delegation clauses have been upheld by the U.S. Supreme Court. *Rent-A-Center*, 561 U.S. at 73-74. And the California courts have similarly recognized that treating delegation clauses as unconscionable and refusing to enforce them as such would be contrary to the FAA. *E.g.*, *Malone*, 226 Cal. App. 4th at 1559.

Not being able to find that the delegation clause itself was unconscionable, the district court instead relied on a separate section of

26

the Contract providing for waiver of a jury trial. That section stated: "if this agreement is determined to be unenforceable, any claims between you and the Company related to your employment shall be subject to a non-jury trial in the federal or state court that has jurisdiction over the matter." ER-9 (capitalization omitted). But that separate jury waiver provision of the Contract had no bearing on the substantive unconscionability of the clause relating to who will decide in the first instance whether to enforce the agreement to arbitrate employment claims. It speaks only to a contingency if the arbitration is *not* allowed. It cannot serve as the basis for holding the delegation clause unenforceable. The district court's ruling to the contrary was legal error.

Indeed, the district court's reliance on the jury trial waiver provision as a basis for refusing to enforce the delegation clause is contrary to Supreme Court precedent. In *Rent-A-Center*, the plaintiff made a number of substantive unconscionability arguments relating to the contract, but those arguments were not related to the delegation clause. 561 U.S. at 71-75. The Court explained that under the FAA, there "are two types of validity challenges … : 'One type challenges

specifically the validity of the agreement to arbitrate,' and '[t]he other challenges the contract as a whole, either on a ground that directly affects the entire agreement (*e.g.*, the agreement was fraudulently induced), or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid.'" *Id*. at 70 (citing *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 (2006)). The Court explained that only the former "is relevant to a court's determination whether the arbitration agreement at issue is enforceable." *Id.* Accordingly, because the plaintiff's arguments addressed the contract's fee splitting and discovery provisions, they could not be used to render the contractual delegation clause unconscionable. *Id.* at 74.

This Court has likewise held that when "considering an unconscionability challenge to a delegation provision, the court must consider only arguments 'specific to the delegation provision.'" *Mohamed*, 848 F.3d at 1210. S*ee also Brennan v. Opus Bank*, 796 F.3d 1125, 1132-33 (9th Cir. 2015) (enforcing delegation provision where plaintiff fails to specifically challenge it). *Rent-A-Center* and this Court's decision adhering to *Rent-A-Center* control and require honoring the delegation clause here.

This case is even more clear-cut than *Rent-A-Center*. Here, there is no plausible argument that the jury waiver provision could render the delegation clause unconscionable. That is because the jury waiver provision merely imposes a consequence (waiver of a jury trial) if the agreement to arbitrate is held to be unenforceable. That consequence is triggered all the same whether the holding of unenforceability is made by a court or an arbitrator. Nothing in the delegation clause impairs plaintiff's ability to pursue his unconscionability defense in an arbitral forum. The district court accordingly erred in holding that the delegation clause was unenforceable.

## III. The Agreement To Arbitrate Plaintiff's Employment Claims Is Enforceable.

If this Court agrees that the district court erred in refusing to honor the delegation clause, there is no need to go further. This Court should reverse that threshold holding and simply send the matter to the arbitrator to address the remaining issues. But if this Court proceeds to the other issues, those aspects of the district court's ruling are equally flawed and should be vacated.

As to the agreement to arbitrate, the district court's only finding of procedural unconscionability was premised on the general adhesive

29

nature of the Contract—which, as discussed above, does not distinguish it from most consumer and employment contracts in today's economy. ER-8.  So, as detailed above, the agreement must be enforced absent a high degree of substantive unconscionability.  *Supra* 25-26; *Poublon*, 846 F.3d at 1261.  The clauses the district court pointed to, however, do not come close to meeting that standard.

In finding substantive unconscionability as to the Contract itself, the district court cited three aspects of the Contract:  (1) the discovery provisions, (2) the right to recover attorney's fees, and (3) prospective waiver of the right to trial by jury.  But none of these terms is substantively unconscionable, let alone support a finding of a high degree of substantive unconscionability that could support a refusal to enforce the Contract.

**Discovery.**  "Limited discovery rights are the hallmark of arbitration."  *Coast Plaza Drs. Hosp. v. Blue Cross of Cal.*, 83 Cal. App. 4th 677, 689 (2000).  Because such limitations further the core arbitral attributes of "informality," "efficiency," and "streamlined procedures" (*Concepcion*, 563 U.S. at 344, 348-350), a state law would be preempted by the FAA if it invalidated an arbitration agreement simply because

the discovery procedures were more limited than those available in district court litigation. *Coast Plaza*, 83 Cal. App. 4th at 689; *see also Concepcion*, 563 U.S. at 341-42 (a state law rule requiring judicially monitored discovery would be preempted by FAA because it would have a "disproportionate impact on arbitration agreements"); *Lucas v. Hertz Corp.*, No. C 11-01581, 2012 WL 5199384, at *2 (N.D. Cal. Oct. 22, 2012) (*Concepcion* "suggests that limitations on arbitral discovery no longer support a finding of substantive unconscionability") (collecting cases). Accordingly, in an arbitration proceeding, it is not unconscionable to provide less than the "full panoply" of discovery that parties would receive in judicial proceedings. *Armendariz*, 24 Cal. 4th at 106. Arbitration cannot be denied because an arbitration clause limits discovery as long as the arbitration process still provides the "essential documents and witnesses" necessary to "adequately arbitrate" the parties' claims. *Id.* To demonstrate that limitations on discovery are unconscionable, a party must introduce evidence "showing how the limitation on discovery would prevent him from vindicating his rights in his particular case." *Sanchez v. Carmax Auto Superstores*

31

*California, LLC*, 224 Cal. App. 4th 398, 404-05 (2014). That standard was not met here.

The Contract in this case incorporates the National Arbitration and Mediation (NAM) rules on discovery, while also supplanting those rules with its own discovery limitations for certain types of discovery. The Contract provides that "the arbitration shall be conducted in accordance with [NAM rules]…except [that]…[i]f either party elects to conduct pre-hearing discovery, each party shall be allowed only up to five (5) interrogatories, including sub-parts, five (5) requests for production, including sub-parts, and two (2) depositions. Electronic discovery will be limited to searches of e-mail accounts of no more than two (2) addresses for a twelve month period (or any shorter period for which e-mails are retained in the ordinary course) and a maximum of five (5) search terms or phrases will be permissible." ER-79.

While the Contract displaces the NAM rules as to the enumerated types of discovery, the NAM rules (which are incorporated by reference) continue to apply to other forms of discovery that are not specifically addressed in the Contract. So, for example, the Contract incorporates NAM's rules on initial disclosures, which require the parties to

exchange "copies of all documents … upon which they rely in support of their claims or defenses." ER-95. The Contract also incorporates NAM's rules which allow for parties to obtain additional discovery upon a finding that it "is not overly burdensome and will not unduly delay conclusion of the Arbitration." ER-96.

Notably, the provisions here allow for *more* discovery than other arbitration agreements that courts have upheld against unconscionability challenges. In *Dotson*, for example, the arbitration agreement permitted only one deposition of a natural person, and additional discovery could be obtained upon a showing of "need." *Dotson*, 181 Cal. App. 4th at 982, 984. The California Court of Appeal held that these limitations were not substantively unconscionable because they would not impede the plaintiff from vindicating her claims in arbitration. *Id.* at 983-85.

Likewise, in *Poublon* this Court held that limitations on discovery were not substantively unconscionable where the plaintiff was permitted to obtain "all 'relevant documents,'" her personnel records, take three depositions, and obtain additional discovery by showing good cause. 846 F.3d at 1271. Unlike the discovery provisions in the

Contract, the plaintiff in *Poublon* was not entitled to electronic discovery or interrogatories. Yet this Court nevertheless held that the restrictions on discovery were not unconscionable because the plaintiff "fail[ed] to make any showing that she would be unable to vindicate her rights under the standard provided in the agreement." *Id.*

Here too, plaintiff never introduced any evidence showing that the Contract's limitations on discovery would foreclose him from vindicating his statutory claims. *See* ER-33-34. And in any event, the Contract permits substantially more discovery than the arbitration agreements that were upheld in *Poublon* and *Dotson*. Thus, there is no basis to reach a different result here.

The district court arrived at a contrary result only because it misinterpreted the Contract. It held that the provision stating that "the arbitration shall be conducted in accordance with [NAM rules]" (ER-79) irreconcilably conflicted with the Contract's own discovery provisions, and that therefore none of the NAM discovery rules applied. ER-11.

This was contrary to the plain terms of the Contract. The Contract is clear that the NAM rules apply "[e]xcept as provided in this paragraph." The paragraph then goes on to set forth discovery rules for

34

only certain types of discovery, including depositions, interrogatories, and e-mail searches. *Supra* 32. These provisions displace the NAM rules as to those forms of discovery. But the Contract is silent on the subject of initial disclosures and the method for obtaining additional discovery. The NAM rules accordingly apply to those forms of discovery.

The district court's misreading of the Contract presupposes a conflict between two provisions that are more naturally read as complimentary. But courts must interpret "documents to effectuate and harmonize all contract provisions." *Bravo v. RADC Enterprises, Inc.* 33 Cal. App. 5th 920, 923 (2019) (citing *Mastrobuono v. Shearson Lehman Hutton, Inc.* 514 U.S. 52, 63 (1995)). To do otherwise, as the district court did here, "departs from common sense" and contravenes the general presumption that "legal authors mean to draft texts that cohere." *Id.*; *cf. Wemyss v. Superior Ct.*, 38 Cal. 2d 616, 621 (1952) ("Where possible, all parts of a statute should be read together and construed to achieve harmony between seemingly conflicting provisions rather than holding that there is an irreconcilable inconsistency."). And to the extent there are "[a]ny doubts" about how to interpret the

35

Contract's discovery provisions, they should be "resolved in favor of arbitration." *Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1022 (9th Cir. 2016); *see also Coast Plaza*, 83 Cal. App. 4th at 686 ("any doubts regarding the arbitrability of a dispute are resolved in favor of arbitration"). TA's plain text reading of the Contract does just that.

In sum, the discovery afforded to plaintiff under the Contract is far more generous than discovery limitations that courts have upheld against unconscionability challenges. And in any event, plaintiff never met his burden to introduce evidence showing why these particular discovery provisions would not permit him to prove his case. *Sanchez*, 224 Cal. App. 4th at 404-05.

***Attorneys' Fees.*** The Contract provides that TA "will pay [for] 100% of the Arbitration Firm's fees as well as the arbitrator's fees and expenses," but that "[e]ach party shall otherwise bear its own costs and fees associated with the arbitration including, but not limited to, attorneys' fees and the cost and fees of responding to discovery requests." ER-79. The Contract also permits the arbitrator to "award reasonable attorneys' fees and expenses" whenever "expressly required by an applicable statute or law" or when the arbitrator determines that

failing to award such fees "would be unconscionable under applicable law." ER-80. However, in the event that TA prevails in arbitration, it may not seek to recover any "costs it incurred in connection with the arbitration." *Id.* This regime—whereby parties bear the cost of their own legal representation except where a law allows for recovery of attorneys' fees from the opposing party—mirrors precisely what would happen if the parties litigated their dispute in a judicial forum.

Arbitration provisions, like the attorneys' fees provisions at issue here, are not unconscionable where they merely impose rules that are substantially similar to those that the parties would encounter in court. In *Poublon*, for example, this Court rejected an unconscionability challenge to a provision permitting the arbitrator to award attorneys' fees as a sanction for misconduct because California law "authorize[s] courts to impose similar sanctions in judicial proceedings." *Poublon*, 846 F.3d at 1268. And in *Baltazar*, the California Supreme Court applied precisely the same reasoning. It held that a provisional relief clause was not unconscionable because it "confer[ed] no advantage on the drafting party that would otherwise be unavailable in the litigation context." *Baltazar*, 62 Cal. 4th at 1247-48. It likewise upheld a

37

confidentiality clause because "[a]greements to protect sensitive information are a regular feature of modern litigation." *Id.* at 1250.

The attorneys' fees provisions in the Contract are no different. They simply reflect the general rule followed in the American legal system (and in California courts) that parties bear their own attorneys' fees except where otherwise provided by law. If anything, the terms of the Contract are *more favorable* to plaintiff because TA is not permitted to recover attorneys' fees or any other costs "it incurred in connection with the arbitration" from plaintiff in the event it prevails, while plaintiff is free to seek such costs if he prevails. ER-80.

The district court nevertheless improperly held that these provisions were substantively unconscionable. ER-10. It reasoned that they "impl[y] the imposition of large fees that seeks [sic.] to either (1) deter an employee from retaining legal representation, (2) deter an employee from seeking simple discovery requests, or (3) deter an employee from initiating arbitration at all." ER-10. But to the extent that these disincentives exist at all, under this Court's and the California Supreme Court's cases, they cannot support a finding of unconscionability where they merely reflect the same dynamics that

would be present in a judicial forum. This is especially true here, where, in light of the Contract's streamlined procedures, a party's legal fees associated with arbitration would be far less than the fees necessary to litigate the same claims in court. *See Armendariz*, 24 Cal. 4th at 111 ("the costs of arbitration are on average smaller than those of litigation").

The only authority the district court cited in service of its conclusion was a passage from *Armendariz* noting that the imposition "of large, fixed, forum costs," may deter plaintiffs from arbitrating their claims. *Id.* But the Contract imposes no *fixed* costs or *forum* costs on plaintiff whatsoever. Just the opposite. Under the Contract, TA is saddled with paying for "100% of the Arbitration Firm's fees as well as the arbitrator's fees and expenses." ER-79. And in the event that the arbitration firm charges the employee any fee "to initiate arbitration," TA must "reimburse" the employee. ER-79. The district court's conclusion is accordingly unsupported by any authority whatsoever.

***Prospective Waiver of Jury Trial.*** As it did when assessing the conscionability of the delegation clause (*supra* 26-27), the district court invoked the jury waiver provision in refusing to enforce the agreement

39

to arbitrate plaintiff's employment-related claims. As noted above, this clause provides that if "this Agreement is determined to be unenforceable," then any ensuing litigation of employment-related disputes "shall be subject to a non-jury trial." ER-81, ER-87. Outside of arbitration (which inherently waives a jury trial right), California courts deem prospective jury trial waivers to be contrary to public policy and unenforceable. *Grafton Partners L.P. v. Superior Ct.*, 36 Cal. 4th 944, 951-56 (2005). The jury waiver provision in the Contract therefore cannot be enforced. But contrary to the district court's holding (ER-9-10), that provision does not provide a basis for finding the entire Contract unconscionable and unenforceable.

As noted earlier, the jury waiver provision of this Contract is not part of the agreement to arbitrate plaintiff's employment-related claims. It merely provides for a contingency in the event that the agreement to arbitrate those claims is held to be unenforceable. *Supra* 27. It accordingly does not bear on the validity or fairness of the agreement to arbitrate itself. There is nothing about this separate clause in the Contract that renders the agreement to arbitrate so unfair

and "so one-sided as to 'shock the conscience.'" *24 Hour Fitness, Inc. v. Superior Ct.*, 66 Cal. App. 4th 1199, 1213 (1998).

In *Poublon*, this Court rejected a similar reliance on an unrelated term. There, the plaintiff argued that a separate clause requiring him to reaffirm his "prior agreements with [the] Company" rendered the agreement to arbitrate his employment claims unconscionable. *Poublon*, 846 F.3d at 1271. The Court noted that the plaintiff failed to explain how the separate provision "reaffirming prior agreements applies to the agreement to arbitrate so as to render it unconscionable." *Id.* at 1272. The same is true here: The jury waiver applies only to claims that cannot be arbitrated, so by definition, it is unrelated to the agreement to arbitrate plaintiff's employment claims. *See also Granite Rock Co. v. Int'l Brotherhood of Teamsters*, 561 U.S. 287, 297 (2010) (defenses to arbitration must focus on "the specific arbitration clause that a party seeks to have the court enforce"); *Tompkins*, 840 F.3d at 1032 ("our authority to review portions of the contract outside the arbitration provision is limited").

Moreover, the district court was mistaken in concluding that because the jury waiver provision is contrary to public policy it is also

inherently unconscionable. The California Supreme Court has said just the opposite: "Contracts can be contrary to public policy but not unconscionable and vice versa." *Sonic-Calabasas A, Inc. v. Moreno*, 51 Cal. 4th 659, 686 (2011), *cert. granted*, *judgment vacated on other grounds*, 565 U.S. 973 (2011)). That is because public policy and unconscionability are conceptually distinct defenses to the enforcement of a contract. A "public policy defense is concerned with the relationship of the contract to society as a whole, and targets contractual provisions that undermine a clear public policy." *Id.* Conversely, "[u]nconscionability is concerned with the relationship between the contracting parties and one-sided terms, such that consent in any real sense appears to be lacking." *Id*

The jury waiver provision is not unconscionable. It calls for a bench trial if the employment claims are not arbitrated. Bench trials can be speedier and more efficient, and do not inherently favor one side over the other. That clause applied equally to both sides—neither could request a jury trial. So, while that contract provision is deemed against public policy and cannot be enforced, it is not the type of "one-sided

term[]" that impedes a party's ability to arbitrate statutory claims, and is not substantively unconscionable. *Id.*

## IV. To The Extent Any Of The Provisions Of The Contract Are Unenforceable, They Should Have Been Severed.

The district court erred by refusing to sever the provisions of the Contract it deemed to be unenforceable.

As a general matter, California courts have a "very liberal view of severability," strongly favoring saving the remainder of a contract, even if a provision or several provisions are deemed unenforceable. *Adair v. Stockton Unified Sch. Dist.*, 162 Cal. App. 4th 1436, 1450 (2008) (citing 1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts § 422). California contract law prohibits voiding a contract unless the entire purpose of the contract is unlawful. *See* Cal. Civil Code § 1598 (where a contract has a "single object," and that object is "unlawful," the contract is void); Cal. Civil Code § 1599 (where a contract has "several distinct objects, of which one at least is lawful," the contract is valid as to the lawful object(s)). But where "any lawful portion" of a contract exists, California law "preserves and enforces" it. *Marathon Ent., Inc. v. Blasi*, 42 Cal. 4th 974, 991 (2008). Only if it is impossible "to distinguish between the lawful and unlawful parts of the agreement" may the court

43

void the contract. *Birbrower, Montalbano, Condon & Frank v. Superior Ct.*, 17 Cal. 4th 119, 138 (1998).

Under that severability analysis, it is clear that any terms here deemed unenforceable should have been severed, and the remainder of the Contract enforced. Any provisions here deemed so unconscionable such that they are deemed unenforceable are easily distinguishable from the remainder of the Contract. Despite the district court's unexplained statement to the contrary, ER-12, all of the provisions identified by the district court here can be excised from the Contract without requiring any augmentation.

For example, severing the delegation clause would leave matters of enforceability to be decided by courts rather than an arbitrator. No augmentation required.

And severing the waiver of a jury trial (which only applies if the agreement to arbitrate is found to be unenforceable) would likewise require no changes or augmentation to the rest of the Contract. Severing that clause would simply provide parties with an option of pursuing a jury trial in district court if the claims proceed in court instead of before an arbitrator.

44

And severing the fees and expenses provision would leave in place the possibility that the arbitrator award reasonable attorneys' fees and expenses if required by law, *see* ER-10; *see also* ER51-52 (NAM rules providing that employer shall pay NAM fees and each party shall pay its own attorneys' fees); and severing the listed discovery limitations would mean that the NAM discovery rules apply in full,[1] *see* ER-11, ER-55-56. Accordingly, to the extent that the provisions at issue here are unconscionable, they should be severed.

And finally, severing the terms deemed unconscionable and unenforceable by the district court, and enforcing the rest of the Contract, is consistent with California law as it "give[s] effect to the parties' mutual intentions." *Minkler v. Safeco Ins. Co. of Am.*, 49 Cal.4th 315, 321 (2010). The Contract expressly provides that if any provision of the Contract is found to be unlawful or unenforceable, "the offending provision" should be deleted and the remainder of the Contract should remain in force. ER-80-81, ER-86-87. The parties thus

---

[1] The Contract provides that, except as provided in the Contract, "the arbitration shall be conducted in accordance with the Arbitration Firm's [NAM's] then current rules for the resolution of employment disputes." ER-79, ER-85.

45

entered the Contract expecting that any unlawful provisions would be severed. Severing the unconscionable provisions honors that mutual contractual expectation and is therefore required under fundamental principles of contract interpretation.

The district court refused to sever these provisions only by failing to perform the severability analysis that California law requires for all contracts. The court did not analyze whether the Contract contained any "lawful portion." *Marathon Ent.*, 42 Cal. 4th at 991. Nor did the court suggest that the conscionable provisions of the Contract were unlawful, or that it was impossible to distinguish between the conscionable and unconscionable provisions. And although the court expressed doubt that it could enforce the severed Contract without augmentation, it did not explain why it reached that conclusion—and that conclusion is wrong in any event. *See supra* 44-45. Finally, the court did not explain why, if the unconscionable provisions were severed, the resulting contract would be so purposeless or one-sided as to render the entire Contract void. Instead, the court's decision not to sever was based on the mere existence of what it held to be multiple unconscionable provisions. ER-12.

46

This Court has held that under California law, there is no "per se rule" that an agreement as a whole is void "if more than one clause in the agreement is unconscionable." *Poublon*, 846 F.3d at 1273. But that was precisely the approach embraced by the district court here in refusing to enforce the Contract.

To the extent that California law supports not enforcing *arbitration agreements* where more than one provision is unconscionable, that would amount to an arbitration-specific rule that would be preempted by the FAA. *Supra* 19-20. Under the FAA, courts can declare arbitration agreements unenforceable only "upon such grounds as exist … for the revocation of any contract." 9 U.S.C. § 2. Put otherwise, "courts must place arbitration agreements on an equal footing with other contracts." *Concepcion*, 563 U.S. at 339. Even if a state rule for declaring an arbitration agreement unenforceable purportedly applies to all contracts, the FAA preempts that rule if it has "a disproportionate impact on arbitration agreements." *Id.* at 342.

Here, the district court stated that under California law, "multiple unconscionable provisions" in an arbitration agreement demonstrate the "pervasive unconscionability" of the agreement and therefore render

47

the agreement un-severable. ER-12. Unlike California's general approach to severability, which strongly favors severing unconscionable provisions, the district court approach favors *voiding* the agreements. But the FAA preempts such rules that single out arbitration for disfavored treatment.

And California courts apply that rule—that more than one unlawful provision renders an entire contract unlawful and thus not susceptible to severability—only in the context of arbitration agreements. *See Armendariz*, 24 Cal. 4th at 124 ("[M]ultiple unlawful provisions" in an arbitration agreement demonstrate that "the arbitration agreement is permeated by an unlawful purpose."); *accord Magno v. The College Network, Inc.*, 1 Cal. App. 5th 277, 291-92 (2016); *Fitz v. NCR Corp.*, 118 Cal. App. 4th 702, 726-27 (2004). By contrast, under generally applicable California law, the existence of multiple unconscionable provisions, on its own, does not require voiding a contract. *See supra* 43-44.

Accordingly, in refusing to sever the provisions it found unconscionable, the district court applied California law that does not

"place arbitration agreements on an equal footing with other contracts" for purposes of severability. The FAA preempts such an approach.

## CONCLUSION

For the foregoing reasons, the district court's ruling should be vacated and this Court should order the district court to enforce the Contract's delegation clause, and (if this Court reaches the issue) order the district court to enforce the agreement to arbitrate plaintiff's claims.

Respectfully submitted,

*/s/ Robert M. Loeb*

E. Joshua Rosenkranz
ORRICK, HERRINGTON &
  SUTCLIFFE LLP
51 West 52nd Street
New York, NY 10019
(212) 506-5000

Max Carter-Oberstone
ORRICK, HERRINGTON &
  SUTCLIFFE LLP
405 Howard Street
San Francisco, CA 94105

Robert M. Loeb
Sarah H. Sloan
ORRICK, HERRINGTON &
  SUTCLIFFE LLP
1152 15th Street, NW
Washington, DC 20005
202-339-8475
*rloeb@orrick.com*

*Counsel for TA Operating LLC*

January 11, 2023

49

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 17. Statement of Related Cases Pursuant to Circuit Rule 28-2.6

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form17instructions.pdf*

**9th Cir. Case Number(s)** 22-55950

The undersigned attorney or self-represented party states the following:

[ X ]   I am unaware of any related cases currently pending in this court.

[  ]   I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.

[  ]   I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

**Signature** *s/* Robert M. Loeb                    **Date** January 11, 2023

*(use "*s/[typed name]*" to sign electronically-filed documents)*

1

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** 22-55950

     I am the attorney or self-represented party.

     **This brief contains 9,031 words,** excluding the items exempted by Fed. R.
App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P.
32(a)(5) and (6).

     I certify that this brief *(select only one)*:

[X] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5),
Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties;
    [ ] a party or parties are filing a single brief in response to multiple briefs; or
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).


**Signature** *s/* Robert M. Loeb       **Date** January 11, 2023
    *(use "s/[typed name]" to sign electronically-filed documents)*

ADDENDUM

9 U.S.C. § 2 ........................................................................ Add.1

9 U.S.C. § 3 ........................................................................ Add.1

9 U.S.C. § 4 ........................................................................ Add.1

## 9 U.S.C. § 2

§ 2. Validity, irrevocability, and enforcement of agreements to arbitrate

A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract or as otherwise provided in chapter 4.

\*\*\*

## 9 U.S.C. § 3

§ 3. Stay of proceedings where issue therein referable to arbitration

If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

\*\*\*

## 9 U.S.C. § 4

§ 4. Failure to arbitrate under agreement; petition to United States court having jurisdiction for order to compel arbitration; notice and service thereof; hearing and determination

A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28, in a civil action or in admiralty of the subject

**Add.1**

matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement. Five days' notice in writing of such application shall be served upon the party in default. Service thereof shall be made in the manner provided by the Federal Rules of Civil Procedure. The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. The hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed. If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof. If no jury trial be demanded by the party alleged to be in default, or if the matter in dispute is within admiralty jurisdiction, the court shall hear and determine such issue. Where such an issue is raised, the party alleged to be in default may, except in cases of admiralty, on or before the return day of the notice of application, demand a jury trial of such issue, and upon such demand the court shall make an order referring the issue or issues to a jury in the manner provided by the Federal Rules of Civil Procedure, or may specially call a jury for that purpose. If the jury find that no agreement in writing for arbitration was made or that there is no default in proceeding thereunder, the proceeding shall be dismissed. If the jury find that an agreement for arbitration was made in writing and that there is a default in proceeding thereunder, the court shall make an order summarily directing the parties to proceed with the arbitration in accordance with the terms thereof.